## STATE v. ADAMS.

1. Evidence.—Declarations of defendant against interest are only admissible against himself, but not as against his codefendants.
2. Ibid.—Motion to Strike Out.—Remedy against incompetent evidence brought out without objection is motion to strike out.
3. Ibid.—Declarations.—Self-serving declarations denoting an intention merely are incompetent, but may be admissible if they be regarded as an act of the party tending to support his testimony.
4. Ibid.—Details—Cumulative Evidence as to details of a previous difficulty between deceased and defendant charged with murder properly excluded after admission of fact that parties had a previous difficulty, the main facts of which had been adverted to by both sides.
5. Homicide—Manslaughter.—The charge that manslaughter "is the killing of another without malice aforethought, expressed or implied," is not error, when considered in the connections here used.
6. Charge.—Statement of a fact introduced by appellant and application of the law to such fact, cannot be complained of by appellant as a charge on the facts.
   *China* v. *Sumter,* 51 S. C., 455, *distinguished from this.*
7. Charge—Homicide—Manslaughter.—Failure to instruct the jury that they could find a verdict for manslaughter, is not reversible

error, when there is no evidence which could in any reasonable view be made to apply to such verdict.

8. IBID.—IBID.—MURDER—REQUEST.—In absence of request, failure to instruct jury that they could find defendant guilty of murder with recommendation to mercy, and the effect of such verdict is not reversible error.

MR. JUSTICE GARY *dissents.*

Before GARY, J., Colleton, March term, 1903. Affirmed.

Indictment against W. B. Adams, Henry Hoff and R. A. Adams for murder. From verdict and sentence, defendant, R. A. Adams, appeals.

*Messrs. Howell & Gruber* and *J. M. Walker,* for appellant. The former cite: *As to definition of manslaughter:* Crim. Code., 120. *As to charging on facts:* 28 S. C., 255; 47 S. C., 513; 56 S. C., 531; 51 S. C., 461.

*Solicitor Davis* and *Messrs. Griffin & Padgett* and *Peurifoy Bros.,* contra (oral argument).

April 11, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendants were jointly indicted for the murder of Henry Jaques. They were tried at the March, 1903, term of the Court of General Sesisons for Colleton County. W. B. Adams and Henry Hoff were acquitted. R. A. Adams was convicted of murder and sentenced to death. His motion for a new trial was overruled, and he appeals to this Court, alleging error in the admission of testimony and in the charge of the presiding Judge.

The appellant was, of course, entitled to the benefit of any defense for which the evidence afforded a foundation, but the discussion of the exceptions will be better understood when prefaced by a statement of the main issue.

R. A. Adams and Henry Jaques met on or very near the public road on February 11th, 1903. Adams shot and killed Jaques. On January 4, 1903, a little more than a

month before the fatal meeting, Jaques had shot Adams in the latter's own back yard for some alleged improper language to Jaques' family. The main issue on the trial was whether Adams killed in self-defense or in revenge.

The appellant first submits the presiding Judge erred in allowing the witness, John O. Jaques, to narrate a conversation with Henry Hoff, in which, as he testified, Hoff told him R. A. Adams had said to him, "We have killed Henry Jaques," and upon being asked why he had done so, answered, "I just couldn't help it; it took a man with a big heart to do it." The Circuit Judge did all he could to prevent this statement from affecting R. A. Adams, by ruling that it could be taken as evidence against Hoff alone. As has been often held, there was no error in admitting the evidence with this qualification.

Error is assigned in the second exception in allowing John O. Jaques to testify that Hoff's wife had told him her husband knew all about the killing. No objection was made until the witness had made this statement, and no motion was made to strike it out. Immediately after this statement, the witness said: "I went through the yard and said, 'Has Henry come home yet?' She said, 'No.' I said, 'I suppose you heard that Allie Adams has killed Henry Jaques?' She said, 'No, but Henry told me he was going to do it this week.'" Whereupon the presiding Judge of his own motion stopped him, saying, "No; just explain why you put her out." No motion was made to strike out this last statement of the witness. An effort had been made to discredit this witness by having him admit that he had turned Hoff's family off witness' land into the road while Hoff was in jail. The Court properly held that witness could explain his reason for doing so, but when the explanation involved hearsay evidence against the defendants, the witness was stopped. To avail himself in his appeal of any prejudice growing out of this statement, the appellant should have moved to strike it out.

In the third exception it is submitted that W: B. Adams should have been permitted to testify that his codefendant, R. A. Adams, repeatedly urged him to leave Ackerman's house, where they had stopped just before the homicide, and return home. The rule is that a defendant cannot introduce in his defense his own statements made to others. Even if this urging by appellant, R. A. Adams, could be regarded as an act of his tending to support his testimony that he had no intention of waiting for Jaques to come, and not as a mere statement in his own favor, the appellant was not prejudiced by its exclusion, for the reason that he himself does not testify that he did anything more than express his own intention of leaving on account of the rain, and only urged his brother to go with him after he had actually started off. There is nothing in his testimony to indicate that he was deterred from leaving by any indisposition of his brother to accompany him or that he did not leave as soon as the inclination came.

In the fourth exception it is alleged that the wife of the deceased should not have been allowed to testify in reply that R. A. Adams cursed her on January 4, before he was shot on that day by her husband. The Court had allowed Youmans and Dandridge, two of defendants' witnesses, who were nearby, to testify to every detail of this difficulty, which occurred some time before the homicide, giving the language of both parties as far as they heard it. As the defendants' counsel was about to have another witness to give his version, the following colloquy took place: "The Court: You can prove the fact that these parties had a previous difficulty, but can't go into all the details of that difficulty—that is an issue the State is not called upon to meet. It consumes too much time. Mr. Gruber: Where the deceased committed acts even against a third person in the presence of the prisoner, it is competent to show it. We desire to show these acts were committed against the person of the prisoner by the deceased. The

Court: Prove the facts, but the minute details is a consumption of time."

This view of the Court was manifestly correct. The evidence as to the previous difficulty was competent only to show the animus of the parties, and thus aid the jury in reaching a conclusion as to who was probably the aggressor, and what demeanor each party had reason to expect from the other when they met and the fatal difficulty occurred. The general details of the previous trouble were properly excluded. The specific question as to whether R. A. Adams on that occasion cursed Mrs. Jaques was never excluded. The appellant was asked this question on his direct examination, and testified that he did not curse her. This tended to show that in the first difficulty Jaques had shot on slight, not great, provocation, and so,may have had some bearing on his animus toward appellant at the time of the homicide. It was competent for the State to introduce the testimony of Mrs. Jaques to contradict this statement. It was not an abuse of discretion for the Circuit Judge to refuse to allow the defense to introduce other witnesses on this collateral inquiry. The fourth, fifth, sixth and seventh exceptions raise practically the same questions. For the reasons above stated, they must be overruled.

In his eighth exception, the appellant insists the presiding Judge was in error in charging that manslaughter "is the killing of another without malice aforethought expressed or implied." It is true, that killing a human being without malice to constitute manslaughter must be unlawful, but these words of the Circuit Judge, when taken in their connection, could not have misled the jury. In the course of the charge there had been a full discussion of malice as an element necessary to the crime of murder. Then to distinguish manslaughter from murder—not from self-defense or misadventure or other excusable killing— the presiding Judge said: "Murder differs from manslaughter in this, that in murder the element of malice must exist, while in manslaughter the element of malice is want-

ing. That is the distinction—murder is the killing of another with malice, manslaughter the killing of another without malice aforethought expressed or implied." This clearly meant that if the jury found that a homicide had been committed having all the elements of murder except malice, the crime would be reduced to manslaughter. Subsequently in the course of the charge, self-defense, which was appellant's plea, was fully covered. The appeal cannot be sustained on this ground.

Error is charged in the ninth exception because the Circuit Judge referred to the shooting of appellant by the deceased, which occurred on January 4th, as a fact in the case. Not only was this shooting admitted by both sides, but it was brought into the case by the defendants, who introduced testimony, as we have seen, intended to show that there was little provocation for it, and that it was due to the vindictiveness of Henry Jaques. It was, therefore, not for the appellant to complain that the Judge charged the jury the fact had been established. *State v. Nickels,* 65 S. C., 176, 43 S. E., 521. If the appellant cannot complain of the statement of a fact which he himself proved, he cannot complain of a statement of the law applicable to that fact. It will be observed that the charge does not instruct the jury what inference is to be drawn from the shooting of January 4th; but in stating the reason for admitting the evidence as to that occurrence, after having referred to it as a fact, the Judge immediately returned to a general statement of the law, using these words: "The law recognizes the fact that where he has recently had a personal encounter with another and they meet, that fact being known, that the party having had this personal encounter, or having been threatened, can construe more harshly and act more quickly upon apprehension than with one with whom he had not had an encounter or been threatened. Therefore, previous threats and quarrels are permitted, not as a defense for killing a man, not as a defense to a homicide, but to show the attitude of the parties." No

enlightened tribunal could receive such testimony on any other ground than that stated in this quotation; and we think it was not only proper, but the imperative duty of the Circuit Judge, to charge it should have no other effect. The case is essentially different from *China* v. *Sumter,* 51 S. C., 455, 29 S. E., 206. There the charge was: "If the city place obstructions there, not giving any notice, and he sustained damages, it would be an act of negligence and mismanagement, and the city would be responsible." This was held erroneous, for the reason, as said in *Bridger* v. *R. R. Co.,* 25 S. C., 30: "The law, however, does not state what facts proved will show the absence of ordinary care." The distinction is that the law does state that homicide committed in revenge for a previous injury is murder. The portion of the charge now under review was nothing more than a statement of this proposition. The ninth, tenth and eleventh exceptions stand on the same ground, and cannot be sustained.

In the twelfth, thirteenth and fourteenth exceptions, appellant complains that the presiding Judge did not specifically instruct the jury that they could find a verdict of manslaughter or of murder with a recommendation to mercy, and inform them of the effect of such recommendation.

As we have seen, the presiding Judge did in a general way distinguish murder and manslaughter in his charge. But aside from this, a careful examination of the testimony fails to suggest any theory upon which a verdict of manslaughter could rest. The issue was clearly murder or self-defense, and a new trial should not be granted for failure to charge upon a phase of the law to which the testimony could not in any reasonable view be made to apply. *State* v. *Dodson,* 16 S. C., 464. Failure to charge the jury that they could convict of murder and recommend to mercy, and that such recommendation would result in a sentence of life imprisonment instead of a sentence of death, has been held by this Court not to be reversible error, when there was no request for such a charge. *State* v. *Owens,* 44 S. C., 324, 22 S. E.,

244. The rule is thus stated in *State* v. *Myers,* 40 S. C., 556, 18 S. E., 892 : "As will be observed, in the first ground of appeal the appellant alleges that the Circuit Judge erred in failing to make a charge that appellant now thinks would have inured to his benefit. By numerous decisions of this Court it has been held to be the law in this State, that no such allegation of error will be considered in this Court unless a request for such charge has been made to the Circuit Judge on the trial before him." See 11 Ency. P. & P., 217, and the numerous authorities there cited. The author says : "The failure of a Judge to charge upon any material point usually results from inadvertence, and the law casts upon the parties the duty of calling the Judge's attention to the matter. If he then refuses to give a proper requested instruction, such refusal is a ground of error; but a party cannot, in a court of error, avail himself of an omission which he made no effort to have supplied at the time. The Court cannot be presumed to do more in ordinary cases than express its opinion upon the questions which the parties themselves have raised on the trial. It is not bound to submit to the jury any particular proposition of law unless its attention is called to it. If counsel desire to bring any view of the law of the case before the jury, they must make such view the subject of a request to charge, and failing in this they cannot assign error."

Any other doctrine would, we think, produce overwhelming embarrassment and delay in the practical administration of justice. Under the Constitution of 1895, the rule has been applied in *State* v. *Smith,* 57 S. C., 489, 35 S. E., 727; *State* v. *Chiles,* 58 S. C., 47, 36 S. E., 496; *Youngblood* v. *R. R. Co.,* 60 S. C., 9, 38 S. E., 232; *Sudduth* v. *Sumeral,* 61 S. C., 276, 39 S. E., 434, and other cases. The doctrine is based on acquiescence and waiver. It is true, the Constitution of 1895 requires the Judges in charging juries "to declare the law." But the right to have all the law declared may be waived like any other right, and an omission acquiesced in. The failure to request instructions on any

particular point is regarded waiver of the right to such instruction and acquiescence in the omission. ·

If the appellant, who was represented by most able and vigilant counsel, thought himself prejudiced by the inadvertent omission of the Circuit Judge to speak of the right of the jury to recommend to mercy and the effect of such recommendation, he should have requested the statement made.

· The judgment of this Court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that Court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.

MR. JUSTICE GARY, *dissenting.* It appears from the record, that his Honor, the presiding Judge, inadvertently failed to charge the jury, that they might render a verdict, recommending the defendants to the mercy of the Court, and one of the exceptions assigns this as error.

In 1894, section 109 of the Criminal Statutes was amended by adding a *proviso,* so that it should read as follows: "Whoever is guilty of murder shall suffer the punishment of death: *Provided, however,* That in each case where the prisoner is found guilty of murder, the jury may find a special verdict, recommending him or her to the mercy of the Court, whereupon the punishment shall be reduced to imprisonment in the penitentiary with hard labor during the whole lifetime of the prisoner."

· The provisions of the Constitution of 1895 are quite different from those in the Constitution of 1868, as to charging the jury by the presiding Judge. Section 26, article IV., Constitution of 1868, was as follows: "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." Section 26, article V., of the Constitution of 1895, is as follows: "Judges shall not charge juries in respect to matter of fact, but shall declare the law." Section 29, article I., Constitution of 1895, is as follows: "The provisions of the Constitution shall be taken, deemed

and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms." These mandatory provisions of the present Constitution made it incumbent upon the presiding Judge to charge, substantially, the law applicable to the case. The act of 1894 made a substantial change in the punishment for murder, and it was of vital importance to the appellant that the jury should have been charged as to its provisions.

The case of *State* v. *Owens*, 44 S. C., 324, is quite different from this case, for, in *State* v. *Owens*, at the conclusion of the charge, the prisoner's counsel assured the presiding Judge that his charge was satisfactory, except that they desired him to explain more fully what is meant by a reasonable doubt. This was a waiver of the right to insist upon the objection now made. *State* v. *Faile*, 43 S. C., 52.

These, in brief, are the reasons for my dissent.