STATE v. GREGORY

(120 S. E., 499)

1. HOMICIDE—DEFENDANT'S CONDUCT PRIOR TO HOMICIDE ADMISSIBLE ON ISSUE OF HIS STATE OF MIND.—In a murder trial, evidence that about ten or fifteen minutes prior to the homicide defendant appeared to be intoxicated, was cursing, and in a bad humor, *held* admissible on the issue of his frame of mind at the time of the homicide.

2. CRIMINAL LAW—EVIDENCE THAT PERSON UNDER WHOM DEFENDANT WAS HOLDING APPOINTMENT WAS SANE HELD IRRELEVANT.—Evidence that the superintendent under whom defendant was holding an appointment as a peace officer at the time of the homicide was a sane man *held* inadmissible, being irrelevant.

3. HOMICIDE—WHETHER ELECTION PROVOKING QUARREL LEGAL HELD IMMATERIAL.—Though the quarrel between defendant and decedent arose out of a dispute between them concerning the legality of an election, whether the election was legal *held* immaterial.

4. HOMICIDE—EXCLUSION OF EXCLAMATION OF WITNESS MADE AT TIME OF HOMICIDE HELD IMMATERIAL.—An exclamation of a witness to the homicide made about the time of the homicide *held* without probative force, and its exclusion immaterial.

5. HOMICIDE—EXCLUSION OF STATEMENT THAT TROUBLE WAS GOING TO OCCUR HELD HARMLESS.—A statement of a boy near the scene of the homicide that "I believe there is going to be trouble there" *held* without probative force, and its exclusion was harmless.

6. HOMICIDE—CHARGE ON SELF-DEFENSE HELD TOO FAVORABLE TO DEFENDANT.—A charge on the question of bringing on the difficulty, which left it to the discretion of the jury whether defendant's words should be considered, *held* more favorable to defendant than he was entitled to, as it was the jury's duty to consider defendant's words as bearing on the plea of self-defense.

7. CRIMINAL LAW—REFERENCE TO NECESSITY OF RETREATING TO WALL EXPLAINED BY REST OF CHARGE.—A reference to the necessity of retreating to the wall *held* fully explained by the rest of the charge.

8. SUNDAY—VERDICT RETURNED AFTER SATURDAY MIDNIGHT OF SECOND COURT WEEK HELD VALID.—Code Civ. Proc., 1922, § 50, fixes the time of holding the Fall term of Court for Aiken County on the fourth Monday in September. The regular Judge was sick, and a special Judge was appointed. Defendant's trial began on Thursday of the second week, and a verdict was returned at twenty minutes past midnight of the following Saturday. *Held,* that the verdict was valid, notwithstanding a contention that the term had expired, in view of Section 42.

Before S. McG. SIMKINS, SPECIAL JUDGE, Aiken, 1922. Affirmed.

W. O. Gregory was convicted of murder with recommendation to mercy and sentenced to life imprisonment and he appeals.

That part of the trial Judge's charge referred to in the discussion of exception IX in the majority opinion was as follows:

There are certain rules that must control you in passing on the question of whether or not the defendant has made

out his plea of self-defense by the preponderance of the
testimony. What are those rules? First, a man must be
without fault in bringing on the difficulty, because no man
can go and commit a wrong and then come into Court and
set up the plea of self-defense. He must be without fault
in bringing on the difficulty, and in this connection I charge
you that so far as words are concerned that words never
justify blows, but that in a matter of the plea of self-de-
fense, where the question is presented to a jury as to
whether or not the defendant was in fault in bringing on the
difficulty, you can or cannot, or may not, I should have said,
as the evidence has presented itself to your mind, consider
the matter of words.

What is the true rule? The true rule is that the plea of
self-defense is not available to one who uses language so
opprobrious, I may add insulting, that a reasonable man
would expect it to bring on trouble, and it may actually
contribute to bringing it on. In passing upon the question
as to whether or not the defendant was at fault in bringing
on the difficulty, you are bound to consider what was his
conduct and action in using words, if they were used.
Were those words calculated to arouse the passion of a man
of ordinary prudence, reason, and discretion, and did they
as a matter of fact bring about the difficulty? If they did,
then a man cannot plead self-defense. In this connection,
I desire to charge you this, as has been written by the de-
fendant's attorney: I charge you that a person who was
at fault in bringing on the difficulty cannot successfully
plead self-defense. Yet a man originally at fault in bring-
ing on a difficulty may regain his right of self-defense. If,
after having been at fault in the beginning, in bringing on
a difficulty, a party withdraws from the conflict, with the
*bona fide* intention of ceasing further aggression towards
his adversary, and thus actually withdraws from the con-
flict, his right of self-defense will return to him.

That part of the trial Judge's charge referred to in the discussion of exception X in the majority opinion was as follows:

The law of self-defense is grounded on the foundation of necessity. The law does not allow a man, though he may honestly believe he is in peril of receiving serious bodily harm or losing his life, to shoot down another if there is a reasonable or probable means of escape—not possible means, but a reasonable and probable means of escape. Human life is a tender thing, and the law says that, before you strike, you must retreat to the wall, but the party does not have to retreat if by retreating he increases his danger of receiving serious bodily harm or losing his life, for a man may be surrounded by circumstances, either real or apparent, that brings him to the honest conclusion that he is about to receive serious bodily harm or lose his life, and in that case if there was no reasonable grounds of escape, and that an ordinary man would have thought so, then he would not be bound to retreat, and if he has shown that by the preponderance of the testimony he would be entitled to a verdict of acquittal at your hands.

Defendant's exceptions were as follows:

I. The presiding Judge erred in allowing the witness Ralph Sullivan to testify, over defendant's objection, that the defendant said, at Atterbury's ice cream parlor some time before the killing, "You cannot prove one of your God damn lies by me," and "What is the matter with your God damn hand?" and I said, "I stuck a knife in it," and he said: "You are a God damn lie. You are trying to run a stall over Ed Wall, and Ed Wall is my overseer." The said testimony being as to a different occurrence, not between the defendant and the deceased, and not in any way connected with the killing, but a separate and independent transaction between different parties, it was irrelevant and incompetent, and extremely prejudicial to the rights of the defendant.

II. The presiding Judge erred in refusing to permit defendant to prove on cross-examination by the State's witness Ralph Sullivan that the present superintendent, Timmerman, under whom the defendant was holding his appointment as constable at the time of the killing, was a sane man. The said testimony being competent and material in reply to testimony of the State's witness Austin Johnson, who had testified that Mr. Brown, a former superintendent under whom defendant had been appointed constable, was in the asylum, and its exclusion was harmful and prejudicial to the rights of the defendant.

III. The presiding Judge erred in permitting the State's witness W. J. Yaun to testify, over defendant's objection, that he met defendant 10 or 15 minutes before the shooting, between the ice cream parlor and Kenny's store, and that he seemed to be drinking, or mad, or something. Said testimony relating to a different transaction between different parties, and a different time and place, and not in any way connected with the killing, was irrelevant and incompetent, and it was very harmful and prejudical to the rights of the defendant.

IV. The presiding Judge erred in allowing the little boy, Coley Blease Wilson, a witness for the State, to testify that he saw defendant in front of the post office about 20 minutes before the killing, and asked defendant to let him read his badge, and he said, "Go on, I don't feel like fooling with you." The said testimony being between different parties, at a different time and place, and a separate and independent transaction not in any way connected with the killing, was irrelevant and incompetent, and brought out to prejudice the defendant before the jury, and was harmful and prejudicial to the rights of the defendant.

V. The presiding Judge erred in permitting the little boy Byron Renew to testify that he asked the defendant to let him shine his shoes in front of the post office about 10 minutes before the shooting, and the defendant told him to

go to hell.   The said testimony being between different
parties, at a different time and place, and not in any way
connected with the difficulty between the defendant and the
· deceased, and being a separate and independent transaction,
was irrelevant and incompetent, introduced by the State for
the purpose of prejudicing the defendant before the jury,
and was extremely harmful and prejudicial to the rights of
the defendant.

VI. The presiding Judge erred in not allowing the de-
fendant to prove by his witness W. G. Rhoden, upon the
State's objection thereto, any facts concerning whether or
not the local club meeting at Warrenville, and the election
of delegates to the county convention, was legal or illegal,
and holding that the question of whether or not the delegates
were legally elected would have nothing to do with the case.
The error being that the undisputed testimony shows that
this difficulty arose out of a dispute between the defendant
and the deceased concerning the legality of said meeting,
and the election of delegates to the county convention, said
testimony was very important and material to throw light
on the attitude of the defendant and as to his contention
concerning the same, as bearing on the question of whether
or not he was at fault in bringing on the difficulty, or
justified in his contention that it was legal, and the exclu-
sion thereof was very harmful and prejudicial to rights of
the defendant.

VII. The presiding Judge erred in not allowing the
defendant's witness George Wilson, upon the State's objec-
tion, to testify as to what Babe Polatty said while they were
sitting on the Polatty porch near the scene of the difficulty
when their attention was attracted by the disturbance, and
in ruling out said exclamation of Babe Polatty.   The error
being that said statement and exclamation was a part of the
*res gestæ,* made at the time, as a spontaneous exclamation
and as a part of the transaction, and it was error for the

presiding Judge to rule it out, said ruling being harmful and prejudicial to the rights of the defendant.

VIII. The presiding Judge erred in sustaining the State's objection to the question asked the defendant's witness R. E. Rhoden, as to what a boy said upon their attention being attracted by the disturbance when he was approaching the scene of the trouble and within 25 yards thereof. The error being that such statement of the boy was a part of the *res gestæ,* competent, and material to the defendant's case, and it was error for the presiding Judge to hold it incompetent and to rule it out.

IX. The presiding Judge erred in charging the jury that, "So far as words are concerned, that words never justify blows, but that in a matter of the plea of self-defense, where the question is presented to a jury as to whether or not the defendant was in fault in bringing on the difficulty, you can or cannot, or may or may not I should have said, as the evidence has presented itself to your minds, consider the matter of words." The error being that it was the duty of the jury to consider the words of the deceased, as well as the words of the defendant, in determining the question of whether or not the defendant was at fault in bringing on the difficulty, and not a matter of discretion of the jury as to whether they would consider such words or not. By said charge his Honor left it to the jury as to whether they should even consider such words or leave them out of their consideration altogether in determining who was at fault in bringing on the difficulty, which we submit was error, very harmful and prejudicial to the rights of the defendant.

X. His Honor erred in charging the jury that "human life is a tender thing, and the law says that, before you strike, you must retreat to the wall." The error being that in this day of improved firearms the ancient rule of retreating to the wall, before striking, does not prevail, and said

charge was erroneous and very harmful and prejudicial to the rights of the defendant.

XI. The presiding Judge erred in overruling the defendant's motion for a new trial and an arrest of judgment on the ground that the verdict was rendered on Sunday, and the further ground that there was no testimony sufficient to sustain a verdict of murder against the defendant in this case. The error being that as the verdict was rendered by the jury on Sunday, it was illegal, null, and void, and as there was no sufficient evidence to sustain a verdict of murder against the defendant in this case, his Honor should have set the verdict aside and arrested the judgment and granted the defendant a new trial. The sentence and judgment of the Court entered upon such a verdict under such circumstances, and on Sunday, is null and void, and the presiding Judge erred in not so holding.

XII. That as the time for holding the fall term of the Court of general sessions for Aiken County as fixed by law was for two weeks, commencing on the fourth Monday in September, 1922, and ending on Saturday night, October 8, 1922, at 12 o'clock, the Court had no jurisdiction to continue its session after 12 o'clock Saturday night, October 2, 1922, as the Court ceased to have the power or jurisdiction to function at said time by operation of law. And the jury had no power or jurisdiction to deliberate on defendant's case after said time, and the Court had no power or jurisdiction to receive and publish their verdict after said time or to pass sentence or judgment upon the defendant upon such a verdict, and such verdict and judgment being null and void, the same should be set aside and a new trial granted.

XIII. That the presiding Judge, Hon. S. McG. Simkins, being a special Judge appointed and commissioned by the Governor to hold the Fall term of the Court of General Sessions for Aiken County, and said commission being given "to continue of force for the term provided by law,"

the power and jurisdiction of the presiding Judge ceased at 12 o'clock on the night of October 8, 1922, by operation of law, and the presiding Judge had no power or jurisdiction to continue said Court or to allow the jury to deliberate on said case, or to receive and publish the verdict of the jury or to sentence the defendant, after said time. The presiding Judge and the Court being without jurisdiction in said particulars, the said verdict and judgment of the Court against the defendant is absolutely null and void, and should be set aside and a new trial granted the defendant.

*Messrs. John F. Williams* and *J. B. Salley,* for appellant, cite: *Evidence of similar offense improper:* 99 S. C., 14; 79 S. C., 197; 100 S. C., 257; 118 S. C., 397; 73 S. C., 277; 73 S. C., 516. *Words used by both parties should have been left for the consideration of the jury:* 75 S. C., 510; 82 S. C., 157; 85 S. C., 106; 91 S. C., 242; 86 S. C., 376. *Modern law of retreat:* 114 S. C., 285. *Verdict and sentence on Sunday a nullity:* 2 Bay., 232; 4 Strob., 486; 15 S. C., 114; Criminal Code, 1912, Sec. 698; 37 Cyc., 588, 589. *Evidence insufficient to sustain conviction of murder:* 116 S. C., 210; 73 S. C., 354. *Question of jurisdiction may be raised at any time:* 53 S. C., 202; 83 S. C., 218. *Court ended before verdict rendered:* 2 Hill 680; 4 Strob., 507; 54 S. C., 238; 76 S. C., 105; 79 S. C., 91; 108 S. C., 13. *Power of special Judge after termination of Court:* 69 S. C., 283; 103 S. C., 299.

*Messrs. R. L. Gunter, Solicitor* and *W. M. Smoak,* for the State, cite: *Relevancy of testimony is in discretion of Judge:* 35 S. C., 537; 60 S. C., 67; 85 S. C., 237. *Testimony showing attitude and condition of mind immediately before the killing admissible:* 73 S. C., 280; 75 S. C., 494; 4 Ell. Evid. Sec. 3029. *Verdict may be received on Sunday:* 25 R. C. L., 1448; 3 L. R. A., 658; 16 Kan., 488; 53 Ala., 402; 7 L. R. A., 327; 4 Strob., 486; 37 Cyc., 589; 15 S. C., 114; 57 S. C., 52; 39 L. R. A. (N. S.), 844; 119

N. C., 274; Criminal Code, 1912, Sec. 608; 1 Civil Code, 1912, Sec. 4044.

December 13, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The defendant was tried upon an indictment charging him with the murder of Cary Hatcher, at Warrenville, in Aiken County, on Sunday morning, July 30, 1922. He was convicted of murder, with recommendation to mercy, and sentenced to life imprisonment under the law.

The evidence for the State tended to establish the following facts: The defendant was a mill deputy, a peace officer, for the industrial community of Warrenville. A few days before the homicide, there had been a Democratic club meeting at which delegates to the county convention had been elected. The defendant was among the delegates elected. On the Sunday morning of the homicide, the defendant approached several persons who had gathered at the front of a store run by one Polatty; Hatcher being among them. The legality of the club meeting was being discussed, Hatcher stating that it was illegal. The defendant replied that any man that said it was illegal was a (vile epithet). Hatcher made for Gregory with a knife in his hand, but some of those present intervened and prevented a clash. Hatcher threw his knife on the ground and Gregory picked it up. One of the bystanders induced Gregory to return the knife to Hatcher, who put it in his pocket. They continued to quarrel, and Hatcher invited Gregory outside of town to settle the matter. Gregory then put his face almost into Hatcher's face and, vilely cursing him, dared Hatcher to hit him. Hatcher with his fist struck Gregory on the side of his head. Gregory reached for his gun, and Hatcher turned and started away from him. Gregory had difficulty in drawing his weapon, and by the time Hatcher had gotten about 10 feet away, Gregory fired, striking Hatcher in the back, the bullet entering about three inches from

the median line, going clear through his body and coming out at his breast. Hatcher died in a few minutes.

The defendant denied that he had cursed Hatcher, or that he had put his face in Hatcher's face and dared him to hit him. He testified that the blow that Hatcher delivered was a staggering one; that he thought he was being attacked with the knife he had given back to Hatcher; that he shot in self-defense when Hatcher was about three feet away preparing to attack him again.

It seems necessary to consider the exceptions *seriatim.* Let them appear in the report of the case.

Exception I. Upon the trial the State offered the testimony of a witness Sullivan, to the effect that at the ice cream parlor, 150 yards from the scene of the homicide, about 10 or 15 minutes prior to the shooting, Gregory came up to where the witness and another were talking; that he appeared to be drinking, "pretty full," and smelt of corn liquor; that in reply to witness, Gregory said, "You can't prove one of your———————lies by me"; that witness had cut his hand and had it tied up; that Gregory asked him," What is the matter with your———————————hand"; he replied that he had cut it; Gregory replied:

"You are a ———— ————lie. You are trying to run a stall over Ed Wall, and Ed Wall is my overseer."

Upon objection to this testimony, the presiding Judge ruled: "If the testimony shows that he was cursing and all just previous to the homicide, then that would throw light on the state of his mind, and I hold that would be competent."

Under the cases of *State v. Miller,* 73 S. C., 280; 52 S. E., 426; 114 Am. St. Rep., 82, and *State v. Rowell,* 75 S. C. 494; 56 S. E., 23, the testimony was clearly admissible, as evidence of the defendant's "conduct, actions and general behavior," "how the accused was deporting himself," immediately preceding the homicide, bearing upon the great

issue in the case, his frame of mind at the time of the homicide, whether or not he fired upon Hatcher with malice "with a heart fatally bent on mischief." See, also, 4 Elliott, Ev. § 3029.

In the Rowell Case the Court said:

"It is always well to let the jury understand what was the condition of the accused as shown by his conduct and language preceding the deadly encounter. It the defendant was drunk, quarrelsome, insulting, these facts are relevant. It is always to be desired that the jury should understand how the accused was deporting himself immediately preceding the homicide."

The circumstances in that case showed that the conversation admitted preceded the homicide about 30 minutes, that it tended to show the condition and temper of the defendant, and was not at all connected with the homicide.

In the Miller Case, evidence of the defendant's unprovoked, insulting and violent demeanor towards a colored man, away from the scene of the homicide and about 10 minutes prior thereto, in no wise connected with the circumstances of the homicide, was held admissible, as not violating the rule against proof of distinct and independent offenses, but upon the ground that it "tended to show that the defendants were, a short time before the homicide, approaching the place where it occurred, armed with a deadly weapon and with a mind ready for mischief. The conduct, actions and general behavior of the accused immediately before the killing is admissible to show that he was armed and in a vicious humor."

Exception III. Another witness for the state, Yaun, was produced, who testified that he met the defendant 10 or 15 minutes before the shooting, between the ice cream parlor and the scene of the homicide, and that the defendant seemed to be "drinking, or mad, or something"; that Gregory did not return his salutation, "was out of his usual way." Similar objection and ruling were made.

The testimony was admissible for the reasons given in the disposition of the first exception.

Exception IV. Another witness for the state, Wilson, a small boy, was produced, who testified that about 20 minutes before the shooting Gregory was sitting in front of the post office; that the witness asked Gregory to let him read what was on his badge; Gregory said, "Go on away, I don't feel like fooling with you;" that the witness smelled whiskey on Gregory's breath and left him. The "Case" does not show that any objection was made to this testimony; and, if it had been, the objection was untenable under the rule above stated.

Exception V. Another witness for the State, Renew, a small boy, was produced, who testified that he saw Gregory sitting on a stone near the post office, and asked him to let him shine his shoes; that Gregory told him to "go to h——." The "Case" does not disclose that any objection was interposed to this testimony; and, if it had been, it could not have been sustained under the rule above stated.

Exception II. (out of its numerical order). A witness for the State, Johnson, testified that Brown, the superintendent who appointed Gregory deputy sheriff in 1914, was then in the asylum. When the witness Sullivan was asked on cross-examination if Timmerman, the present superintendent, was crazy or not, the question was ruled inadmissible for the reason that the law presumes every man sane. The question was utterly irrelevant to any issue in the case, and was properly ruled inadmissible.

Exception VI. A witness for the defendant, Rhoden, was asked about the legality of the club meeting and election of delegates to the county convention, apparently in reply to the declaration of Hatcher in reference thereto which provoked the quarrel. Upon objection by the State the testimony was excluded as irrelevant. Whether Hatcher was right or wrong in his charge of illegality

was entirely immaterial to the issue then being tried; the testimony was properly excluded.

Exception VII. The witness for the defendant, Wilson, was sitting near the scene of the homicide talking with one Babe Polatty. When the quarrel started, Polatty's attention was attracted, and he exclaimed "What are they doing?" or, "What are they going to do?" This testimony came out without objection on the part of the State. After it had been given, the attorney for the State interposed: "We object to what was said between this witness and somebody else." The attorney for the defendant insisted: "Any explanation voluntarily made at the time this thing was going on would be competent." The Court ruled: "That is not competent in my judgment." The defendant made no effort to prove "any explanation voluntarily made." Possibly the word "explanation" is a misprint for "exclamation"; if so, the exclamation of Polatty had no probative force and its exclusion could not possibly have affected the defendant.

Exception VIII. A witness for the defendant, Rhoden, attempted to testify that about 25 or 30 steps from the scene of the homicide, as he was approaching the crowd, he met a boy who said, "I believe there is going to be trouble there." The testimony was excluded. Even conceding that it was a part of the *res gestæ,* the statement had no probative force, one way or the other, and its exclusion was harmless.

Exception IX. The entire charge of the presiding Judge on the subject of bringing on the difficulty, beginning at folio 234 and ending with folio 238, will be reported. The Court was considering the words of the defendant, and in the discretion allowed the jury to consider or not the words used, he charged more favorably to the defendant than he was entitled to, as it was the duty of the jury to consider them as bearing upon the plea of self-defense.

Exception X. The entire charge in this connection, beginning at folio 239 and ending with folio 241, will be reported. It will then be seen that the presiding Judge fully and correctly charged the law, his reference to retreating to the wall being fully explained.

Exceptions XI, XII, XIII. The contention of the appellant is that the verdict having been rendered at 20 minutes past 12 o'clock midnight Saturday of the second week of Court, is void for want of jurisdiction of the Court at that time.

The time for holding the Fall term of the Court of General Sessions for Aiken County is thus fixed by Statute (Section 50, Code Civ. Proc., 1922):

"The Court of General Sessions for the County of Aiken * * * on the * * * fourth Monday in September, two weeks."

On account of the illness of Hon. George E. Prince, Judge of the Tenth Circuit, who had been assigned to hold said Fall term, Hon. S. McGowan Simkins, of Edgefield, was duly appointed special Judge and commissioned by the Governor to hold the same.

The Court was duly opened on the fourth Monday in September, the 25th of the month, and continued during that and the following week. The trial of the defendant began on October 5, 1922, (Thursday); the jury retired for consideration of the case on Saturday afternoon, the 7th; they returned their verdict at 12:20 a. m. Saturday night or Sunday morning.

The contention of the appellant is that the term expired by limitation at 12 o'clock midnight of Saturday, October 7th, and that at 20 minutes after 12 o'clock the verdict and following sentence were *coram non judice* and void.

There are several reasons why this contention cannot be sustained:

(1) The term is fixed by law to commence upon a certain Monday and continue for two weeks. In the absence

of a contrary intention, "two weeks" means two periods of seven days each, and the two weeks expired, certainly, not earlier than 12 o'clock midnight of the second following Sunday. In the case of *Hiller v. English,* 4 Strob., 486, it was held, quoting from the syllabus:

"Where a Court is directed to sit two weeks, if a jury, having retired to consider their verdict before midnight of Saturday in the first week, return into Court after midnight and before daylight of Sunday, their verdict may be received and published."

If a verdict can be lawfully received upon an intervening Sunday, there appears no good reason why it should not be received upon the Sunday which is the concluding day of the term.

(2) Even if the second Sunday cannot be considered as the concluding day of the term and the term should be held to have expired at 12 o'clock midnight of Saturday preceding, following the custom of Parliament, the Legislature, conventions, boards of directors, and other bodies keeping a journal, a transaction completed within so short a time as in this case may well be entered as the day's prcoeedings. *Hiller v. English,* 4 Strob., 496.

(3) The verdict was received at 12:20 o'clock; whether solar or standard time is not stated. If controlled by solar time, as is plausibly presented in the case of *Texas Co. v. Hightower,* 100 Tex., 126; 96 S. W., 1071; 6 L. R. A. (N. S.), 1046; 123 Am. St. Rep., 794, the verdict was received before the end of Saturday.

(4) Under Section 42, Code Civ. Proc., 1922, the presiding Judge had the power to continue the Court into the next week in order to finish the business and if he had done so the case would have fallen squarely under the decision in *Hiller v. English,* 4 Strob., 486. If the presiding Judge should be a regular Circuit Judge with an assignment at another place, that section provides for an assignment of another Circuit Judge or the appointment of a special

Judge to finish the business of the Court. The special Judge having no other appointment was free to continue the Court beyond the two weeks as long as might be necessary.

In *Barnes v. State,* 68 Fla., 291; 67 South., 131, it is held that the term of a Circuit Court in one county does not *ipso facto* end at midnight on the Saturday preceding the Monday fixed for the beginning of the term in another county.

In *Richter v. Koopman,* 131 Ala., 399; 31 South., 32, it is held that when the statute fixes the term of Court for two weeks beginning upon a certain Monday, the last day of the two calendar weeks was Sunday.

In *Taylor v. Ervin,* 119 N. C., 274; 25 S. E., 875, it is held, quoting from the syllabus:

"Under Code, § 910, and statutes amendatory thereof, which provide for Courts to begin on a Monday named, and to last for one week, the term embraces the following Sunday, unless the term is sooner adjourned,"

—and that the reception of a verdict on Sunday was legal, the Court adding, "as has been repeatedly held," citing a number of cases.

The case of *State v. McLemore,* 2 Hill, 680, which apparently takes a contrary view, is fully explained by Judge Wardlaw in the case of *Hiller v. English, supra.*

If, as indicated by some authorities, while the verdict may be received on Sunday, as a matter of necessity and mercy, sentence cannot be imposed upon a nonjuridical day (see *Coleman v. Henderson,* Litt. Sel. Cas. [Ky.], 171, 12 Am. Dec., 290), in this particular case it could not possibly affect the interest of the defendant whose sentence is fixed by the law, and it would be small comfort to him to remand the case for the identical sentence which has been imposed.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE FRASER (dissenting) : The appellant was tried and convicted of murder, with recommendation to mercy. Such facts as are necessary will be stated in the discussion of the questions raised.

I. The State was allowed to prove, over the objections of the appellant, that at several times on the morning of the homicide, and before the homicide, the appellant spoke harshly to other people. The defendant did not put his character in issue. The State cannot attack the defendant's general reputation unless the defendant shall himself put his reputation in issue. The purpose of allowing proof of general reputation is to show that the defendant is probably not the aggressor. The effect of showing that the defendant was in a bad humor that morning was the same. It tended to show that the defendant was the aggressor, and was clearly incompetent. It is said that the case of *State v. Rowell,* 75 S. C., 506; 56 S. E., 23, is in conflict with this holding, but not so. In the Rowell Case, the defendant was drunk and seeking a difficulty. About half an hour before the alleged homicide, two gentlemen passed along on the sidewalk, where the defendant was leaning against a post. He interrupted the conversation between Mr. Speed and Mr. O'Bryan by remarking, after one of their remarks to each other, "It is a damned lie, and I don't believe a word of it." It tended to show that the defendant was in an aggressive mood and probably the aggressor in the case at bar. The evidence here showed that the defendant wanted to be let alone.

The testimony of the witness Yaun was as follows :

"I saw Mr. Gregory on the Sunday morning of the killing, 15 or 20 minutes before, between the ice cream parlor and Kenny's store.

"Q. Did you speak to him? A. Yes, sir.

"Q. Did he speak to you? A. No, sir; I didn't hear him.

"Mr. Williams: I want it understood that we object to this line of testimony.

"The Court: I understand that.

"Q. What was his humor? A. He seemed to be drinking, or mad, or something. He was out of his usual way. I have known Mr. Gregory intimately for 15 years, and I know when he is drinking and when he is not. This was 10 or 15 minutes before the shooting. I had just gotten home and got on the porch and sat down when the shooting happened."

The testimony was a mere opinion based upon no fact, and then the witness did not know whether the defendant was "drinking, or mad, or something."

This assignment of error should be sustained.

II. When the State's witness Arthur Johnson was on the stand, he stated on the cross-examination that the defendant had first been appointed deputy sheriff by a man named Brown who is now in the asylum. The defendant then offered to show that he had been reappointed by good men who were not in the asylum. This testimony was objected to by the State and excluded.

This assignment of error cannot be sustained. The testimony was clearly irrelevant to any issue in the case.

III. The quarrel between the defendant and the deceased was the result of a club election. The deceased stated that the defendant, one of those elected, was illegally elected. The legality of the election had nothing to do with the guilt or innocence of the accused. This assignment of error cannot be sustained.

IV. The appellant complains of error in the following charge:

"Human life is a tender thing, and the law says that, before you strike, you must retreat to the wall."

His Honor charged the jury:

"The law of self-defense is grounded on the foundation of necessity. The law does not allow a man, though he may honestly believe he is in peril of receiving serious bodily harm or losing his life, to shoot down another if there is a reasonable or probable means of escape— not possible means, but a reasonable and probable means of escape. . Human life is a tender thing, and the law says that, before you strike, you must retreat to the wall; but the party does not have to retreat if by retreating he increases his danger of receiving serious bodily harm or losing his life, for a man may be surrounded by circumstances, either real or apparent, that brings him to the honest conclusion that he is about to receive serious bodily harm or lose his life, and that in case if there was no reasonable grounds of escape, and that an ordinary man would have thought so; that he would not be bound to retreat, and if he has shown that by the preponderance of the testimony, he would be entitled to a verdict of acquittal at your hands."

If the defendant desired any fuller statement, it should have been requested. This assignment of error cannot be sustained.

V. The verdict was rendered at 12:20 o'clock p. m. on Sunday, October 8, 1922.

The statute taken from appellant's argument is:

"The Court of General Sessions for the County of Aiken shall be held at Aiken on the second Monday in January, two weeks; the first Monday in May, two weeks, and the fourth Monday in September, two weeks."

The appellant claims that Sunday is a *dies non,* and the term expired at 12 o'clock on Saturday night.

The point is so fully covered by *Hiller v. English,* 4 Strob., 507, that no other statement is necessary:

"I think that an examination of our statutes would show that the day on which the verdict in the case now under consideration was received (even admitting it to have been

Sunday at noon), being within the term of two weeks, which, without exception of any days, is, by the Act of 1845 (11 Stat., 316), prescribed for Richland district, was, by Act of the Legislature, a judicial day, whatever may have been the common law on the subject; not that I suppose the Legislature has commanded or contemplated the ordinary sitting of a Court on Sunday, but that I find the legislative will expressed in terms which plainly import, accoring to the established canons of interpretation, that judicial business is authorized during the whole of a term which includes Sunday; and I receive this expression as a removal of prohibitions and penalties, which at least would justify proceedings on Sunday in cases of strong necessity, in the exercise of a sound discretion that would do violence to no conscience and encounter no prejudice."

This exception is overruled.

Some of the other exceptions are mere incidents peculiar to the last trial and some should not be discussed, in view of the fact that a new trial should be ordered.

I think that the judgment should be reversed, and a new trial ordered.

MR. JUSTICE WATTS concurs.