### STATE v. ABERCROMBIE

#### (126 S. E., 142)

1. HOMICIDE—TESTIMONY AS TO DETAILS OF TRANSACTION BETWEEN DEFENDANT AND DECEASED'S WIFE FOUR WEEKS BEFORE KILLING, HELD INADMISSIBLE.—In prosecution for manslaughter, admission of details of transaction between defendant and deceased's wife four weeks before killing, during which defendant cursed and abused the wife, as result of which wife procured warrant for his arrest, *held* error, since testimony should have been limited to threats made by defendant against deceased.

2. HOMICIDE—TESTIMONY AS TO DETAILS OF PREVIOUS DIFFICULTY BETWEEN DEFENDANT AND DECEASED INADMISSIBLE IN MANSLAUGHTER PROSECUTION.—In manslaughter prosecution, testimony as to details of previous difficulty between defendant and deceased is not admissible.

3. CRIMINAL LAW—TESTIMONY AS TO CONVERSATION BETWEEN DEFENDANT AND DECEASED'S WIFE TENDING TO SHOW DEFENDANT'S VIOLATION OF PROHIBITION LAWS, HELD NOT ADMISSIBLE IN MANSLAUGHTER PROSECUTION.—In manslaughter prosecution, testimony as to a conversation between defendant and deceased's wife tending to show defendant's violation of Prohibition Law, held not admissible.

4. WITNESSES—COURT'S EXAMINATION OF EIGHT YEAR OLD WITNESS HELD TO SHOW MENTAL INCOMPETENCY.—Court's examination of eight year old witness *held* to show mental incompetency of witness.

5. WITNESSES—BELIEF IN GOD AND HIS PROVIDENCE SUFFICIENT TO ESTABLISH COMPETENCY OF WITNESS.—A belief in God and His providence is sufficient to establish the competency of a witness objected to on account of defective religious beliefs.

---

NOTE: For authorities discussing the question of religious belief as qualification of witness, see notes in 42 L. R. A., 553; 23 L. R. A. (N. S.), 1023.

6. WITNESSES—EIGHT YEAR OLD BOY HELD INCOMPETENT FOR WANT OF
BELIEF IN GOD AND HIS PROVIDENCE.—Eight year old boy, who stated
to the Court that he had never heard of God or of a heaven or of
a hell or of a devil, *held* incompetent for want of belief in God and
a providence, notwithstanding his testimony that he had learned the
Lord's Prayer and had heard it said that the bad man caught those
who lied and cursed.

Before DENNIS, J., Greenville, August, 1923. Reversed
and remanded.

J. T. Abercrombie was convicted of manslaughter, and he
appeals.

Exceptions 1, 2, 3, and 4 are as follows:

Exception 1: The Court erred in permitting the witness,
Mrs. Ann Williams, to testify as follows:

"About half an hour by sun Mr. Abercrombie got Colonel
Sims to come up there. I live right on the road and Mr.
Abercrombie came by and blowed the whistle and com-
menced hollering in front of my door. He went on in the
house and turned around and came back and hollered again
and cursed me. He went on down to the house after he
cursed me to a s. o. b. and Mr. Sims came up to my house
and Abercrombie walked up singing a little song. I did not
say anything to him. He went down and commenced talking
to Mr. Sims. I went back and said 'My husband is not
here, you ought not to be cursing here.' Then they broke
and came in the house, and said they were going to search
the house and get him and kill him. I told them not to come
in the house. They drawed the pistol on me and dared me
to pick up the shotgun. Asked me if I was going to use it.
I said, 'No, sir. What could I do? You already got your
pistol on me.' They started out and I followed them to the
door. I said, 'You all come down here and slander me this
way and hunt for my husband. I am going right now and
take you with a warrant.' And Mr. Sims cussed me to a
s. o. b. and said, 'I am sorry you think you have got that
little enough sense to think you can punish us coming in here.
We have a right here.' I says, 'You have no right here.'

Mr. Abercrombie said, 'This is my place.' I said, 'This is my yard and house while I live here.' And they went on out then."

Specification: This was permitting the witness to give a detailed statement of a difficulty between her and the defendant. The fact that the defendant had cursed this witness could not be used against him under a charge of murder for killing her husband.

Exception 2: The Court erred in permitting the witness, Mrs. Ann Williams, to testify over the objection of the defendant that she went to another Magistrate in her endeavor to get a warrant for the defendant.

Specification: Whether this witness got a warrant for defendant was no evidence against him under the charge before the Court, and related to a difficulty between defendant and a third person.

Exception 3: The Court erred in permitting the witness, Mrs. Ann Williams, to testify, over objection of the defendant, as follows:

"Abercrombie said he would be there to the gin. He would be afraid he would take it like he had accused him of taking five gallons of his liquor."

Specification: This was not in the nature of a threat, and was merely an attempt to attack defendant's reputation as to handling liquor.

Exception 4: The Court erred in permitting the witness, James Williams, to testify, over objection of the defendant, on the ground that the witness was incompetent.

Specification: Witness demonstrated that he was mentally incompetent, and also that he did not believe in God and His providence.

The Court's examination of witness, James Williams, follows:

"Q. What is your name, son? A. James.

"Q. James what? A. James Williams.

"Q. How old are you? A. Eight.

"Q. Eight years old? A. Eight years old.

"Q. Well, do you know what they told you just now about telling the truth when you put your hand on that Book? Do you know what that was for? A. No, sir.

"Q. Well, do you know what will happen to you if you don't tell the truth? Do you know whether you ought to tell the truth or not? A. Yes, sir.

"Q. Huh? A. Yes, sir.

"Q. Well, what do you think will happen to you if you don't tell the truth? Do you know anything that will happen to you if you don't tell the truth? A. No, sir.

"Q. Turn around here. Did you say yes or no? A. No, sir.

"Q. You don't know? If you get up here now and not tell the truth you don't know what they will do with you? A. No, sir.

"Q. Do you know about God? A. No, sir.

"Q. Don't go to Sunday School? A. I go some Sundays.

"Q. They tell you about God there? Do you understand about God? A. No, sir.

"Q. Do you understand about telling a lie and telling the truth? Do you know the difference between telling a lie and telling the truth? A. No, sir.

"Q. What ought you to tell? A. Tell the truth.

"Q. Tell the truth. Why should you tell the truth? Is that better than telling a lie? A. Yes, sir.

"Q. Do you know anything about telling a lie? Do you know what will happen to you? A. No, sir.

"Q. Do you know whether it is a sin or not to tell a lie? A. No, sir.

"Q. Is it a sin to tell a lie or not? A. Yes, sir.

"Q. It is a sin? A. Yes, sir."

*Messrs. Dean, Cothran & Wyche,* for appellant, cite: *Testimony as to previous difficulty:* 125 S. C., 385; 112 S. C., 43; 68 S. C., 471. *Evidence of conduct immediately pre-*

*ceding homicide:* 127 S. C., 87. *Evidence of transaction between defendant and third person:* 180 U. S., 356; 66 S. C., 419; 68 S. C., 304. *Incompetency of witness:* 24 S. C., 185. *Attacking reputation for truth and veracity:* 28 R. C. L., 628; 112 S. E., 921; 52 S. C., 530; 28 R. C. L., 605; 153 Pac., 712; 17 Ann. Cas., 23. *Impeaching the testimony of a witness:* 1 Hill, 251; 33 S. C., 593; 93 S. W., 390; 89 N. W., 900; 62 So., 57; 112 Pac., 794; 85 Atl., 379; 170 S. W., 620; Ann. Cas. 1914-B, 534; 157 S. W., 1177; 101 Pac., 946; 218 S. W., 864; 181 N. Y. S., 921; 222 S. W., 702; 191 Pac., 609; 647 Ann. Cas. 1915-A, 1044; 99 Atl., 316; 97 Pac., 1056; 104 Pac., 493; 98 Pac., 110; 106 Pac., 647; 113 Pac., 244. *Evidence of domestic difficulties:* 100 S. C., 248. *Right to reply to new matter brought out in reply:* 4 Rich. L., 464; 8 Enc. Pl. & Pr., 133; 89 Penn., 77; 29 S. C., 231; 12 Rich., 654. *Landowner and cropper:* 15 S. C., 82; 18 S. C., 511; 15 S. C., 551; 115 S. E., 204; 70 S. C., 391; 111 S. C., 1; 20 S. C., 1; 20 S. C., 6; 40 S. C., 511. *Prejudicial error to read statute inapplicable to case:* 122 S. C., 286; 66 S. C., 18; 75 S. C., 512; 70 S. C., 315; 93 S. C., 49; 72 S. C., 162; 66 S. C., 449; 71 S. C., 444; 78 S. C., 23; 19 S. C., 125. *Judge's charge as to croppers lien:* Sec. 5693, Code 1922. *As to ejectment:* Sec. 5278, Code 1922. *As to "law of the castle":* 95 S. C., 127. *As to previous difficulty:* Wharton on Homicide, 3d Edition, 541. *As to self-defense:* 75 S. C., 510.

*Messrs. D. W. Smoak, Solicitor,* and *Bonham, Price & Poag,* for the State, cite: *Admission of testimony:* 79 S. C., 83; 26 S. C., 204. *Competency of a person offered as witness:* 28 R. C. L., 450. *Prior acts:* 71 S. C., 104.

January 13, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The defendant was tried and convicted of manslaughter before Judge Dennis and a jury at the January term of

Court, 1924, at Greenville, for the killing of Ed Williams, and sentenced to ten years in the state penitentiary. He has appealed, and by 21 exceptions alleges error and seeks reversal.

Exceptions 1, 2, and 3 must be sustained.

1    Mrs. Williams should not have been allowed to give the complete details of a transaction that occurred at her house about four weeks before the killing. That was a transaction between the defendant and a third person, and the witness should have been permittd only to testify as to threats made by the defendant against the deceased. It was prejudicial to the defendant that she should be allowed to testify to the abuse of her made by the defendant, and that he cursed and abused her in the absence of her husband.

2    It is not allowed to give the details of any previous difficulty between the defendant and the deceased much less to give the details of a transaction between the defendant and a third person.

In the case of *State v. Williams,* 125 S. C., 385; 118 S. E., 784, the Court says:

"Evidence was allowed, over objection, as to the origin of the difficulty. The fact that there had been a previous difficulty was proper, the details were inadmissible, and their introduction error."

The rule in such cases is thus stated in the case of *State v. Evans,* 112 S. C., 43; 99 S. E., 751, where the defendant was given a new trial on the ground that the Court allowed the State to give the details and causes of a previous difficulty:

"The evidence as to the previous difficulty was competent only to show the animus of the parties, and thus aid the jury in reaching a conclusion as to who was probably the aggressor, and what demeanor each party had reason to expect from the other when they met and the fatal difficulty

occurred. The general details of the previous trouble were properly excluded:"

In *State v. Adams,* 68 S. C., 421; 47 S. E., 676, the Supreme Court says:

" 'Therefore, previous threats and quarrels are permitted, not as a defense for killing a man, not as a defense to a homicide, but to show the attitude of the parties.' No enlightened tribunal could receive such testimony on any other ground than that stated in this quotation; and we think it was not only proper, but the imperative duty of the Circuit Judge, to charge it should have no other effect."

The Judge made no charge on this case to save the defendant from the prejudicial error in admitting this testimony. From these cases it will be seen that the error here is clear. No detail of the transaction was excluded by the presiding Judge.

The case of *State v. Gregory,* 127 S. C., 87; 120 S. E., 499, states the correct rule to be that evidence of conduct immediately preceding the homicide is admissible to show the frame of mind at the time of the homicide, but things which happened four weeks prior thereto would not be competent. Mrs. Williams should not have been allowed to state the details of a transaction between herself and the defendant that occurred some weeks before the homicide in the absence of her husband. That she secured a warrant for the arrest of the defendant, the result of the trial, that the warrant was dismissed and that she procured another; this was a transaction between the defendant and a third person and it went into the details and trial of another case against the defendant, and was prejudicial to the defendant.

As to exception 3 this was merely a conversation between the defendant and Mrs. Williams; it was not in the nature of a threat, but an attack on the reputation of the defendant by an attempt to show that he violated the prohibition laws, it certainly did not bear on the case that he was on trial for. Exception 4 must be sus-

tained. James Williams, the son of deceased, about eight years old, was examined by the Court at the request of the defendant as to his competency. The witness demonstrated that he was mentally incompetent, as will be shown by reading the answers made to the questions by the Court. The witness further showed himself incompetent in his answers relative to his knowledge of God and His providence. This case is quite similar to *State v. Belton,* 24 S. C., 185; 58 Am. Rep., 245, where the Court says:

"Now, let us recur to the first exception. A leading case upon the question of law raised therein in England is the case of *Omichund v. Barker,* reported in 1 Willes, 538, and more fully in 1 Atk., 21, and found in 1 Smith Lead. Cas., 195. In this case, upon a full and most interesting discussion of the whole question of the competency of a witness as affected by his religious creed, it was made to rest upon the question of his belief in the existence of a God, and rewards and punishments by Him, either in this world or in the future state, 'the Court stating that one who believes a future state, and that he shall be punished in the next world as well as in this if he does not swear the truth, should be entitled to the greater credit, as he is plainly under the strongest obligation.' "

In most of the States of the Union it has been held that the competency of a witness is not affected by a disbelief in a future state, and that his testimony should be admitted if he believes in the existence of a God and in divine punishment of crime. See *Hunscom v. Hunscom,* 15 Mass., 184. *Brock v. Milligan,* 10 Ohio, 121. *Blocker v. Burness,* 2 Ala., 354. *United States v. Kennedy,* 3 McLean, 175 (Fed. Cas., No. 15524). *Bennett v. State,* 1 Swan. (Tenn.), 411. In our own State the case of *Jones v. Harris,* 1 Strob., 160, lays down very much the same doctrine, holding that a belief in God and His providence is sufficient to establish the competency of a witness, objected to on account of defective religious beliefs.

Now, let the competency of the witness, James Williams, be tested by the rule of *Jones v. Harris, supra,* which is the law of South Carolina on this subject. Did he believe in a God and His providence? He stated to the Court that he had never heard of a God or of a heaven or of a hell or of a devil. Now, then, could he have a belief in the existence and providence of a Great Being, of whom, up to the time that he was offered as a witness, he had never heard even? Such a belief, under such circumstances, seems impossible. In the absence of such belief, he was incompetent under the authorities cited. The fact that he had learned the Lord's Prayer, had repeated it daily for years, repeated it in Court, and stated that he had heard it said that the bad man caught those who lied and cursed, etc., did not furnish, as it seems to us, sufficient proof of a belief on his part of the existence and providence of a Being of whom, up to that moment, he had never heard.

Inasmuch as the judgment must be reversed and a new trial granted, it is unnecessary to consider the other exceptions.

Judgment reversed and a new trial granted.

Messrs. Justices Fraser and Cothran concur.

Mr. Justice Marion in result.

Mr. Chief Justice Gary did not participate.

Mr. Justice Marion: I have grave doubt as to the correctness of the conclusion reached in this case. As the cause is on the criminal side of the Court, in deference to the opinion of a majority of the members of the Court, I resolve that doubt in favor of the defendant and concur in the result.